**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SANDY ASAD,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | **No. 25-5214** |
| **v.** | : | |
| | : | |
| **TRANSUNION LLC,** | : | |
| **Defendant** | : | |

**McHUGH, J.** **November 24, 2026**

## MEMORANDUM

This case follows on *Norman v. Trans Union, LLC*, Civil Action No. 18-5225, a class action settled before this court in 2025. Plaintiff, a California resident who opted out of that class, now seeks to capitalize on that settlement by bringing individual claims against TransUnion under both the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*. and the California Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code § 1785.1, *et seq*. She also seeks to certify an entirely new class. TransUnion moves to dismiss all counts. For the reasons below, its motion will be granted in part and denied in part.

## I. Facts as Pled

According to Plaintiff, in December 2024, she noticed several inquiries on her credit report that she believed to be inaccurate and sent a letter disputing them to TransUnion. Sec. Am. Compl., ¶ 7, ECF 22. These inquiries occurred between February 2023 and November 2024. *Id.* ¶ 8. Believing that these inquiries were either unauthorized, and therefore fraudulent, or duplicative, Plaintiff submitted a dispute letter to Defendant about them. *Id.* ¶¶ 9, 7. Soon after, TransUnion

sent Plaintiff a form letter stating that it would not investigate her dispute.[1] *Id.* ¶ 10. These inquiries remained on Plaintiff's credit report, lowering her score and demanding her time and attention as she attempted to have them removed. *Id.* ¶ 12.

In April 2025, after the *Norman* class period closed but before the settlement agreement had been finalized, Plaintiff noticed another inquiry that she found suspicious: a May 11, 2024 inquiry from GS Bank GM. *Id.* ¶¶ 14–15. She submitted an additional dispute. *Id.* ¶ 14. TransUnion sent her another letter, distinct from the previous "502 Letter," declining to investigate. *Id.* ¶¶ 16, 17.

## II. Standard of Review

Within the Third Circuit, motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) are governed by the well-established standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

## III. Discussion

### A. Plaintiff's Individual FCRA Claims May Proceed

#### 1. *Plaintiff has pleaded individual claims*

As an initial matter, the parties dispute whether Plaintiff has asserted individual FCRA claims against TransUnion. Defendant did not address such claims in its motion to dismiss, later arguing that it did not need to as there were no individual claims to begin with. It points to the

[1] Plaintiff refers to these responses as "502 letters." This court adopted the term "502 Letter" to describe the form letters sent by TransUnion to consumers whose reinvestigation requests were summarily denied on the ground that the file was accurate because it reflected that some credit inquiry had in fact been made. *Norman v. Trans Union, LLC*, 479 F.Supp.3d 98, 111 (E.D. Pa. 2020) ("*Norman I*") (describing the letters sent to class members as "form letter[s], automatically generated from a library of previously constructed form paragraphs").

final section of the complaint, which alleges two counts after making the case for proceeding as a class action. Def. Reply, 5–7, ECF 26.

Plaintiff responds that it is clear on the face of the complaint that she is bringing both individual and class claims. It bears mention that Plaintiff's complaint is captioned "individually and on behalf of all other similarly situated persons." Additionally, most of the violations alleged would otherwise be encompassed by the *Norman* settlement,[2] and necessarily such claims could not form the basis for a new class action. Moreover, the complaint explicitly points out that "the National FCRA class covers Defendant's violations that occurred *after* the period covered in the *Norman* class, including Plaintiff's April 2025 dispute. This does not include Plaintiff's individual claims that accrued during the *Norman* class period prior to February 1, 2025." Sec. Am. Compl., ¶ 24, ECF 22 (emphasis in original).

While the Second Amended Complaint could have been structured more clearly, it is apparent that Plaintiff here is alleging both individual and class claims.

*2. Plaintiff has sufficiently pleaded her individual claims*

TransUnion argues that all of Plaintiff's FCRA claims are insufficiently pled, as they do not plead facts showing that she "called into question" the disputed information. Though sparse, Plaintiff's complaint is sufficient to proceed.

Under the FCRA:

> If the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to

[2] The *Norman* class was defined as: "All consumers with an address in the United States and its territories to whom Trans Union sent its '502 Letter' in response to a written dispute of an inquiry from December 5, 2016 to January 31, 2025." Civil Action No. 18-5225, ¶ 9, ECF 183.

> determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file … before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

15 U.S.C. § 1681i(a)(1)(A). To state a claim, Plaintiff needs to show that (1) she disputed the information in a manner that triggered the reinvestigation obligation and (2) no reinvestigation occurred in violation of the FCRA. "To trigger an agency's duty to conduct a reasonable investigation, the consumer must (1) 'directly … dispute' (2) 'the completeness or accuracy of' (3) 'any item of information contained in [the] consumer's file." *Norman v. Trans Union, LLC*, 479 F.Supp.3d 98, 114 (E.D. Pa. 2020) ("*Norman I*").

The agency then must respond in one of three ways: deleting the inaccurate item, § 1681i(a)(1), determining that the dispute is frivolous or irrelevant, § 1681i(a)(3), or proceeding with a reinvestigation, § 1681i(a)(1). *Norman I*, 479 F.Supp.3d at 128. For certain claims under § 1681i, Plaintiffs must make a *prima facie* showing of inaccuracy to state a claim. *See Bibbs v. Trans Union, LLC*, 43 F.4th 331, 344–45 (3d Cir. 2022) (holding that claims that question the "reasonableness" of an investigation under § 1681i must make a showing of inaccuracy). But where, as here, the Plaintiff alleges that no investigation occurred, I have previously held that a consumer need only show that they disputed the information, not that it was actually inaccurate. *Norman I*, 479 F.Supp.3d at 128; *see also Norman v. Trans Union, LLC*, 669 F.Supp.3d 351, 376 (E.D. Pa. 2023) ("*Norman II*") ("[W]hen the agency performs no reinvestigation at all, requiring the consumer to prove the inaccuracy of their disputed items in the first instance would be inconsistent with the structure of the FCRA, which squarely places the burden of determining accuracy on the credit reporting agency after a dispute has been lodged.").

TransUnion generally argues that Plaintiff has not shown that she adequately "called into question," the accuracy of the information in her disputes, and therefore has not pled sufficient facts to show that she triggered an obligation to investigate. It contrasts the limited allegations here with those in *Norman*, where the plaintiff pleaded detailed facts describing how he knew that the disputed information was false and the multiple steps he took to dispute it. Plaintiff responds that her pleading is sufficient, because in this third iteration of the complaint she has identified specific dates and reasons for suspicion, and further alleged that she sent a letter to TransUnion disputing the entries, to which it responded with a "502" form letter declining to investigate.

Sending a letter to dispute the accuracy of the information is enough on its own to satisfy the first element of the claim. And *Norman* proceeded on the factual premise that "no reinvestigation occurred for any consumer who received a 502 Letter." *Norman I*, 479 F.Supp.3d at 132. Therefore, with regard to Plaintiff's individual claims, the Second Amended Complaint pleads the elements necessary to state a claim under § 1681i(a)(1)(A) and may proceed past this stage.

**B. Plaintiff's FCRA Class Claims Are Dismissed**

Plaintiff also asserts a claim on behalf of a putative nationwide class premised on the same theory, but for alleged violations outside of the *Norman* class period. Specifically, she argues that Defendant violated FCRA's reinvestigation provision when it failed to respond to her April 2025 dispute regarding an inquiry by GS Bank GM. As she acknowledges, this is the only claim in the complaint anchoring the putative class action. Here, notably, Plaintiff does not plead that she received a "502 Letter," but instead some other kind of correspondence declining to investigate. This difference is crucial, because the statute gives credit reporting agencies options.

The FCRA contains avenues for agencies to resolve disputes they deem frivolous or irrelevant. In the same section mandating reasonable reinvestigations, the FCRA also states: "Notwithstanding paragraph (1), a consumer reporting agency may terminate a reinvestigation of information disputed by a consumer under that paragraph if the agency reasonably determines that the dispute by the consumer is frivolous or irrelevant, including by reason of a failure by the consumer to provide sufficient information to investigate the disputed information." 15 U.S.C. § 1681i(a)(3)(A). The agency must then notify the consumer, by mail, and the notice must include their reasoning and any information they need to conduct the investigation. 15 U.S.C. § 1681i(a)(3)(B-C). Therefore, a reinvestigation is only required if the agency does not delete the information or "respond with a reason the dispute is considered frivolous or irrelevant," *Norman I*, 479 F.Supp.3d at 128, and it "need only respond with a reason the inquiry will not be pursued." *Id.* at 134.

This section begins with a "notwithstanding" clause, which "in statutes … shows which provision prevails in the event of a clash." *N.L.R.B. v. SW Gen., Inc.*, 580 U.S. 288, 301 (2017) (quoting A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 126–27 (2012)). Unlike "unless" or "except" clauses, which typically signal an affirmative defense stemming from exceptional situations, *Evankavitch v. Green Tree Servicing, LLC*, 793 F.3d 355, 362–63 (3d Cir. 2015), a "'notwithstanding' clause clearly signals the drafter's intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other section." *Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 18 (1993). Therefore, these sections create two independent, permissible paths for agencies upon receiving a dispute. And notably, this section allowing termination requires agencies to send a letter to the consumer informing them that the investigation will not proceed.

Here, as contrasted with the individual claims, Plaintiff explicitly pleaded that she received some form of correspondence other than a "502 Letter." She clearly differentiates the two forms of correspondence. Sec. Am. Compl., ¶ 17, ECF 22. The only fact she provides about the content is that it "affirmatively represented that TransUnion did not have to investigate inquiry disputes." *Id.* But, as noted above, the statute provides options aside from investigation, and a letter declining further investigation does not violate the statute where the credit reporting agency invokes one of its statutory options as the basis for its refusal. Plaintiff attempts to assert that this is a "willful misrepresentation concerning" her rights and Defendant's obligation, *id.* ¶ 18, but this states a legal conclusion that merely tracks an element of the claim, which is not properly considered when evaluating motions to dismiss. *Lutz v. Portfolio Recovery Assocs.*, 49 F.4th 323, 331 (3d Cir. 2022); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016) ("The clearest indication that an allegation is conclusory and unworthy of weight in analyzing the sufficiency of a complaint is that it embodies a legal point."). And even as a legal conclusion it is lacking, because a refusal to reinvestigate is not a *per se* violation of the FCRA where it is properly grounded in the statute.

Plaintiff therefore fails to state a claim. Beyond that, the claim she has unsuccessfully attempted to assert would not suffice for purposes of class certification, because whatever correspondence she may have received is not described as a form letter, and an essential characteristic of the class in *Norman* was that members received the same, rote "502" letter in response to their inquiries. Absent such uniformity, litigation on a class-wide basis cannot be pursued. *See Klotz v. Trans Union, LLC*, 246 F.R.D. 208, 215 (E.D. Pa. 2007) (need to conduct inquiry into basis for refusal to investigate renders certification improper). This claim, and class allegations, will be dismissed.

**C. Plaintiff's CCRAA Claims Are Dismissed**

*1. Plaintiff Has Not Met the Inaccuracy Threshold for CCRAA Claims*

Plaintiff renews her individual and class claims under the California state equivalent to the FCRA, the CCRAA, based on the same alleged violations. These claims will be dismissed for the reasons below.

The CCRAA is analogous to the FCRA and contains a similar provision mandating reinvestigation of disputed information in a credit file. The pertinent section of that statute reads:

> If the completeness or accuracy of any item of information contained in his or her file is disputed by a consumer, and the dispute is conveyed directly to the consumer credit reporting agency by the consumer or user on behalf of the consumer, the consumer credit reporting agency shall within a reasonable period of time and without charge, reinvestigate and record the current status of the disputed information before the end of the 30-business-day period beginning on the date the agency receives notice of the dispute from the consumer or user, unless the consumer credit reporting agency has reasonable grounds to believe and determines that the dispute by the consumer is frivolous or irrelevant, including by reason of a failure of the consumer to provide sufficient information, as requested by the consumer credit reporting agency, to investigate the dispute. Unless the consumer credit reporting agency determines that the dispute is frivolous or irrelevant, before the end of the five-business-day period beginning on the date the consumer credit reporting agency receives notice of dispute under this section, the agency shall notify any person who provided information in dispute at the address and in the manner specified by the person. A consumer credit reporting agency may require that disputes by consumers be in writing.

Cal. Civil Code § 1785.16(a). In contrast to how I have construed the FCRA under controlling Third Circuit precedent, the Ninth Circuit has held that the CCRAA requires a *prima facie* showing of inaccuracy at the pleading stage. *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th

Cir. 2010).[3] This requires showing that the disputed information was "patently incorrect or materially misleading." *Id.* at 890–91.

Plaintiff's complaint does not contain facts that establish the inaccuracy of the disputed information. It only includes a table with the inquiring entity, the date of the inquiry, and the general reason that Plaintiff suspected inaccuracy, all of which are vague. No further detail is included for any of the pieces of information from which to draw inferences. Based on earlier submissions Plaintiff has made in this case, it appears that she is attempting to reconstruct her communications with TransUnion, merely asserting, without demonstrating, that the disputed information was inaccurate. But courts must "disregard naked assertions devoid of further factual enhancement and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Santiago v. Warminster Twp.*, 629 F.3d 121, 131 (3d Cir. 2010) (internal citations omitted). Therefore, Plaintiff has not made a *prima facie* case that the inquiries were inaccurate and has not stated a claim under the CCRAA.

*2. Plaintiff Has Not Shown that the Allegedly Duplicate Inquiries Were Inaccurate*

Plaintiff also alleges that a sub-class of CCRAA claims exists, based solely on claims stemming from duplicate inquiries that Defendant did not investigate. It is unclear why Plaintiff pleads this as its own sub-class, and whether its existence relies on the validity of the first, broader CCRAA class. It appears, based on the briefing, that Plaintiff alleges this sub-class as a backstop should the other counts anchoring the broader CCRAA class be dismissed, advancing the theory that duplicate inquiries are necessarily inaccurate, requiring reinvestigation as a matter of course.

[3] As noted in my prior order dismissing Plaintiff's first amended complaint, while I am not bound by the Ninth Circuit, I defer to its interpretation of California law.

In a chart, Plaintiff lists five inquiries on five different dates from two inquiring entities, summarily asserting that these represent duplicate inquiries without further elaboration. TransUnion argues that these inquiries cannot be characterized as duplicative because they are all on separate dates and therefore not identical. It points to the dictionary definition of "duplicate" in the adjective form, which is "consisting of or existing in two corresponding or identical parts or examples" or "being the same as another." Duplicate, Merriam-Webster, https://www.merriam-webster.com/dictionary/duplicate (last accessed Nov. 24, 2026). Because the dates are not identical, TransUnion argues, by definition the inquiries cannot be duplicates. Plaintiff responds by arguing that identical inquiries could be made on different dates, and that the Court must infer when the complaint pleads that these inquiries were duplicates, it necessarily meant that one inquiry was permissible and subsequent inquiries were not.

The complaint lists all the inquiries in question on the chart, with the text "This was a duplicate inquiry" listed next to them. Sec. Am. Compl., ECF 22, ¶ 8. The complaint further states, without elaboration, that "All the above disputes were inaccurate," either due to alleged fraud or their duplicative nature. *Id.* at ¶ 9. But in opposing the motion to dismiss, Plaintiff now argues that some of the inquiries should be viewed as authorized and others as not. Pl. Resp. to Mot. to Dismiss, ECF 25, 9. This contradicts the plain text of the complaint, so for practical purposes Plaintiff asks the Court to draw an inference in her favor that is inconsistent with the allegations in the complaint. *See Lutz*, 49 F.4th at 334 (declining to make an inference in the non-movant's favor when "the amended complaint cuts against such an inference").

There is little reason for a Court to find allegations plausible when instead of facts, a plaintiff resorts to semantics in an attempt to salvage a weak complaint, particularly when it is the third iteration of that complaint. And there is even less reason for a court to consider such an ill-

defined claim as representative of a class of consumers. Plaintiff has not made a *prima facie* case that these pieces of information are "patently incorrect or materially misleading," and the remaining CCRAA claims will be dismissed.

## IV. Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss will be granted in part and denied in part. An appropriate order follows.

/s/ Gerald Austin McHugh
United States District Judge